**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LEROY T. MOORE,<br><br>        Plaintiff,<br><br>v.<br><br>MIDDLESEX COUNTY PROSECUTOR'S OFFICE, et al.,<br><br>        Defendants. | Civil Action No.: 11-3879 (JLL)<br><br>**OPINION** |

**LINARES**, District Judge.

Plaintiff, Leroy T. Moore, a state inmate presently confined at the Northern State Prison in Newark, New Jersey, seeks to bring this action in forma pauperis. Based on his affidavit of indigence, the Court grants Plaintiff's application to proceed in forma pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a) (1998) and order the Clerk of the Court to file the Complaint.

At this time, the Court must review the Complaint, pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons set forth below, the Court concludes that the Complaint should be dismissed.

**I. BACKGROUND**

Plaintiff, Leroy T. Moore ("Moore"), brings this civil action, pursuant to 42 U.S.C. § 1983, against the following defendants: Middlesex County Prosecutor's Office; Christopher L.C. Kubereit, Assistant Prosecutor; Jennifer Sessa; and Bruce Kaplan, Middlesex County Prosecutor.

The following factual allegations are taken from the Complaint, and are accepted for purposes of this screening only. The Court has made no findings as to the veracity of plaintiff's allegations.

This is Moore's fourth Complaint bringing claims under § 1983 with regard to incidents relating to a New Jersey state court criminal drug charges stemming from a May 21, 2009 incident and an August 28, 2009 incident in Carteret, New Jersey. His first Complaint was dismissed without prejudice on or about November 15, 2010. See Franklin, et al. v. Borough of Carteret, et al., Civil No. 10-1467 (JLL). His second action, Moore v. Dow, et al., Civil No. 11-281 (JLL), is currently pending.[1] A third action, filed after the instant Complaint, Moore v. Middlesex County Prosecutor's Office, et al., Civil No. 11-6198 (JLL),[2] was consolidated with Civil No. 11-281 (JLL) on January 17, 2012, and both matters were stayed that same date until the criminal proceedings in the Superior Court of New Jersey are fully and finally adjudicated. The Stay Order in Civil No. 11-281 (JLL) was lifted on March 21, 2012.

The Court takes judicial notice of a recent decision of the Superior Court of New Jersey, Middlesex County, Law Division, issued by the Honorable Michael A. Toto, J.S.C., and filed January 23, 2012. (See Docket entry no. 56-1 in Civil No. 11-281 (JLL) filed in this Court on March 23, 2012). In the state court's decision, it was noted that Moore has been charged with two separate drug offenses: (1) Accusation No. 09-10-00383, Count 1 - Possession with intent to

---

[1] The second action, 11-281 (JLL), involves claims of alleged constitutional violations stemming from a state criminal arrest on August 28, 2009, namely, excessive force and unlawful search and seizure claims in violation of the Fourth Amendment, and a malicious prosecution claim.

[2] Moore's third action, 11-6198 (JLL), involves allegations of prosecutorial misconduct in an alleged breach of Moore's plea agreement stemming from a separate state criminal arrest and indictment on drug charges.

distribute on or near school property, contrary to N.J.S.A. 2C:35-7, in the third degree; and (2) Indictment No. 09-09-01644-I, Count 1 - Possession of a controlled dangerous substance, contrary to N.J.S.A. 2C:35-10a(1), in the third degree. Pertinent here, the state court recited the facts concerning the state criminal charges as follows:

> On October 8, 2009, Mr. Moore entered a plea to the Indictment, Possession of a Controlled Dangerous Substance, in return for a three-year term of incarceration and under Accusation No. 09-10-383, entered a plea to an extended term of nine years with a four-year period where he would be ineligible for parole. When he entered into the plea, he did not have discovery on the Accusation. On November 2, 2009, the lab results were completed. In addition, as part of the Plea Agreement, Mr. Moore would be released on his own recognizance pursuant to a Factor 12 agreement to work down the plea to a probationary term.
> 
> . . .
> 
> On January 18, 2011, the defendant filed a Motion to retract his guilty plea. A hearing was held on February 28, 2011. The basis for the request to withdraw the plea was that the plea was not knowingly and voluntarily entered into. The Court granted the Motion by way of Order of March 21, 2011, in that the defendant did not receive discovery, it was alleged that the defendant found discrepancies regarding the Indictment and the Accusation as to the addresses contained in the warrants, and asserted a colorable defense.
> 
> In January 2011, the defendant filed a civil suit asserting that the police entered his residence without a valid warrant and that the warrants were based on forged documents. As part of a civil suit, the defendant received in discovery a lab report of August 28, 2009 involving the incident described in the Accusation. Mr. Moore alleged the search warrants signed by the Honorable Dennis Nieves were all signed except for the warrant to 651 Roosevelt Avenue, which was printed and alleged that the document was forged or somehow manipulated.
> 
> A Motion for Reconsideration was filed by the State in April 2011 asserting the defendant did not advance a claim of innocence and gave a clear factual basis for both crimes at the time of the plea and, therefore, did not satisfy the Slater factors. In addition, the State argued that the search warrants were not defective, that the warrants are presumed valid, and it is the defendant's burden to establish otherwise. The State further argued that the defendant was not satisfied that the State would be seeking the maximum term of nine years with a four-year period of parole ineligibility instead of the probationary term and, for that reason, the defendant filed a Motion to retract his plea.

On May 6, 2011, the Court found that the plea was voluntarily entered into and found that the defendant did not assert any innocence, only a possible Motion to Suppress the Search Warrant for 651 Roosevelt Avenue. The Court, as part of the Reconsideration Motion, requested and provided a review of all Search Warrants as well as Affidavits. The court determined that the Warrants for 100 Roosevelt Avenue and 651 Roosevelt Avenue were supported by probable cause and property identified. When Mr. Moore challenged the State's proof, he had not asserted a claim or basis for his innocence. Likewise, Mr. Moore claimed that no evidence placed him at 651 Roosevelt Avenue selling or distributing a Controlled Dangerous Substance. However, the Affidavit in connection with the Warrant detailed controlled buys through a confidential informant who arranged for several purchases of crack cocaine from mr. Moore.

As to the Search Warrant, a confidential informant was utilized by officers in connection with controlled buys. Mr. Moore challenges this and claims that the confidential informants did not provide a phone number that was utilized and the call was not made in the presence of an officer. Furthermore, he said that the Warrant was defective in that no apartment number was noted in a multi-family apartment. In reviewing the Affidavit for the Search Warrant, specifically page 13, there was a surveillance at 651 Roosevelt Avenue, where Mr. Moore was seen exiting the front right door facing the building from Roosevelt Avenue. The Search Warrant identifies the property as 651 Roosevelt Avenue. The surveillance was conducted on Mr. Moore on August 2, 2009. Officers witnessed a hand-to-hand transaction, which the officers believed to be an exchange of a controlled dangerous substance. On August 18, 2009, again, officers witnessed an exchange of a white powdery substance through a confidential informant, and on August 7, 2009, mr. Moore allegedly sold a controlled dangerous substance to a confidential informant.

The police report, page LM 6, involving the incident of May 21, 2009, reveals that Mr. Moore and Mr. Demond were seated in a car when they were observed by officers. The officers indicated that the gentlemen were known to have outstanding Warrants and they were ultimately taken to headquarters. As part of the search, the officers found on Mr. Demond one small, white waxed envelope, or baggie, stamped in black with the numbers 0000, containing a white powdery substance believed to be heroin. As to the search performed on mr. Moore, one clear plastic Ziploc style bag containing green vegetation and a folded dollar bill containing white powdery substance believed to be Cocaine were found.

There was a lab analysis performed and the report revealed trace amounts of Heroin with regard to Mr. Demond. However, there was no indication that there was any testing on any of the evidence regarding Mr. Moore. The lab report is dated June 23, 2009. This information was available at the time of the defendant's plea.

On May 24, 2011, Mr. Moore alleged that the prosecutor was engaging in malicious prosecution and filed an action in the Federal District Court, and with the New Brunswick Municipal Court.

On June 1, 2011, Mr. Moore alleged the State withheld exculpatory evidence and that on may 27, 2010, the State had represented all discovery was provided. However, no lab reports were provided with respect to the August 2009 incident involving the Accusation.

On June 24, 2011, the prosecutor advised Mr. Butler [Moore's defense counsel] that a lab report was turned over as part of the civil case.

Mr. Moore, through his attorney, requested discovery in May 2010. The defendant entered his plea in October 2009. The lab report, which was ultimately provided, suggests a trace amount of cocaine (0.94 grams) was recovered from the residence of 651 Roosevelt Avenue.

In August 2011, Mr. Moore agrees to dismiss all matters that he had filed in exchange for probation with an in-patient drug program and asserts that he performed and assisted in criminal investigations.

On August 1, 2011, Mr. Moore filed a suit against the Prosecutor's office for breach of contract.

On August 30, 2011, Mr. Moore seeks to dismiss the Indictment and Accusation.

On October 19, 2011, mr. Moore asks the Court to enforce the plea and sentence him to probation and a drug program of 18 months.

On January 9, 2012, the Court received a letter from Mr. Moore supplementing his previous correspondence to enforce the plea and referencing State v. Lopez, 359 N.J. Super. 222 (2003). The Court does not find State v. Lopez relevant authority to the issue of the retraction of the plea, the issue presently before the Court. Lopez addresses the issue of intent to distribute on the basis of drugs between or among joint possessor. Id. at 232.

On January 9, 2012, the Court received a letter from the prosecutor enclosing a copy of the statement that defendant provided to law enforcement on August 28, 2009. Statement of Leroy Moore, August 28, 2009, hereinafter "S." During the questioning by Investigator Joseph Celentano, Mr. Moore admitted that he was distributing coke/crack cocaine to about two customers a day to control his habit. (S 5:9-14). He sold about two twenties of crack. (S 5:20-21). At the time of the search, Mr. Moore was aware that there was approximately two grams of powder coke at 651 Roosevelt Ave. (S 7:6-7). These statements were made after Mr. Moore was read his Miranda rights.

(January 23, 2012 Mem. Decision on Mot. to Retract Guilty Plea, Superior Court of New Jersey, Middlesex County, Law Division, Criminal Action, Indictment No. 10-03-00342-I, attached as

Docket Entry No. 56-1 in Civil No. 11-281 (JLL)). The state court allowed Moore to either "(1) withdraw his guilty plea; (2) move for a hearing on whether his cooperation was of a substantial benefit to the State; or (3) renegotiate the plea agreement." (Id.).

In this action, Moore alleges that, on May 27, 2010, defendant Kubereit violated his constitutional rights by withholding exculpatory evidence in a criminal proceeding against Moore. In particular, Moore alleges that from May 2010 through May 23, 2011, defendant Kubereit continually deceived the state criminal court and Moore's defense counsel by stating that Moore possessed several grams of "dope" when Moore was arrested at his residence on August 28, 2009. The Complaint does not expressly articulate the manner in which the evidence was exculpatory. However, Moore attaches a November 2, 2009 Evidence Return Receipt from the New Jersey State Police Forensic Sciences Office that lists the contents of two plastic bags in packet K. Moore has a handwritten notation on the laboratory report, which reads: "w/held lab report as to the CDS & amount." (Compl., Attachments at Docket Entry No. 2).

Moore further alleges that defendant Sessa, acting as an agent for the Middlesex County Prosecutor's Office and for defendant Kubereit, conspired with all defendants to withhold the exculpatory evidence. He attaches a May 27, 2010 letter from Ms. Sessa to Moore's defense counsel, which purportedly contained a "copy of all discovery" and a copy of Moore's statement to police on a DVD. Moore has a handwritten notation on the letter that lab reports were withheld. (Id.). Moore seeks an unspecified amount of compensatory and punitive money damages.

## II. LEGAL STANDARD FOR SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil

action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity. The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. This action is subject to sua sponte screening for dismissal under both 28 U.S.C. § 1915(e)(2)(B) and § 1915A.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions." Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)). The standard for evaluating whether a complaint is "frivolous" is an objective one. Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). See also Erickson, 551 U.S. at 93-94 (reviewing whether a pro se prisoner's civil rights complaint complied with the pleading requirements of Rule 8(a)(2)).

However, recently, the Supreme Court revised this standard for summary dismissal of a Complaint that fails to state a claim in <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937 (2009). The issue before the Supreme Court was whether Iqbal's civil rights complaint adequately alleged defendants' personal involvement in discriminatory decisions regarding Iqbal's treatment during detention at the Metropolitan Detention Center which, if true, violated his constitutional rights. <u>Id</u>. The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).[3] Citing its recent opinion in <u>Bell Atlantic Corp. v. Twombly</u> for the proposition that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" the Supreme Court identified two working principles underlying the failure to state a claim standard:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice … . Rule 8 … does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

<u>Id.</u> at 1949-1950 (<u>citing</u> <u>Twombly</u> 550 U.S. 544, 555 (2007)). The Court further explained that

> a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

---

[3] Rule 8(d)(1) provides that "[e]ach allegation must be simple, concise, and direct. No technical form is required." Fed. R. Civ. P. 8(d).

8

Id. at 1950.

Thus, to prevent a summary dismissal, civil complaints must now allege "sufficient factual matter" to show that a claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1948. The Supreme Court's ruling in Iqbal emphasizes that a plaintiff must demonstrate that the allegations of his complaint are plausible. Id. at 1949-50; see also, Twombly, 505 U.S. at 555, & n.3; Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).

Consequently, the Third Circuit observed that Iqbal provides the "final nail-in-the-coffin for the 'no set of facts' standard" set forth in Conley v. Gibson which applied to federal complaints before Twombly.[4] See Fowler, 578 F.3d at 210. The Third Circuit now requires that a district court must conduct the two-part analysis set forth in Iqbal when presented with a motion to dismiss:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [Iqbal, 129 S.Ct. at 1949-50]. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." [Id.] In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. See Phillips, 515 F.3d at 234-35. As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show [n]'-'that the pleader is entitled to relief.'" Iqbal, [129 S.Ct. at 1949-50]. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

---

[4] In Conley, as stated above, a district court was permitted to summarily dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Id., at 45-46. Under this "no set of facts" standard, a complaint could effectively survive a motion to dismiss so long as it contained a bare recitation of the claim's legal elements.

Id. at 210-211.

This Court is mindful, however, that the sufficiency of this pro se pleading must be construed liberally in favor of Plaintiff, even after Iqbal. See Erickson v. Pardus, 551 U.S. 89 (2007). Moreover, a court should not dismiss a complaint with prejudice for failure to state a claim without granting leave to amend, unless it finds bad faith, undue delay, prejudice or futility. See Grayson v. Mayview State Hosp., 293 F.3d 103, 110-111 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 117 (3d Cir. 2000).

### III. DISCUSSION

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

42 U.S.C. § 1983. Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994). Plaintiff's Complaint asserts claims against state prosecutors and an agent or employee of the Middlesex County Prosecutor's Office regarding an allegation that defendants withheld exculpatory evidence from Moore during state criminal proceedings.

A prosecutor is absolutely immune from suit for all actions and decisions undertaken in furtherance of his prosecutorial duties. Imbler v. Pachtman, 424 U.S. 409, 410 (1976). Thus, a

prosecutor's appearance in court as an advocate in support of an application for a search warrant and the presentation of evidence at such a hearing are protected by absolute immunity. Burns v. Reed, 500 U.S. 478, 492 (1991). Similarly, "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993). Whether or not an action falls within the scope of his prosecutorial duties depends upon its function. See Van de Kamp v. Goldstein, 555 U.S. 335, 342–43 (2009)(citing Burns v. Reed, 500 U.S. at 486). The analysis hinges on whether the prosecutor is, at the time, acting as an officer of the court, as well as on his action's relatedness to the judicial phase of the criminal process. Imbler, 424 U.S. at 430, 431 n. 33.

Further, allegations that the prosecutor acted willfully or in bad faith, knowing his conduct to be unauthorized, will not strip the prosecutor of absolute immunity unless a reasonable prosecutor would recognize the conduct as "clearly outside his jurisdiction" in representing the state. See Ernst v. Child and Youth Servs. Of Chester Cnty., 108 F.3d 486, 502 (3d Cir.), cert. denied, 522 U.S. 850 (1997)(subjective state of mind irrelevant to absolute immunity and allegations of bad faith will not strip a prosecutor of absolute immunity)(quoting Bauers v. Heisel, 361 F.2d 581, 591 (3d Cir. 1966), cert. denied, 386 U.S. 1021 (1967)); Imbler, 424 U.S. at 427 (admitting that prosecutorial immunity leaves wronged defendant without civil remedy for a prosecutor's "malicious and dishonest" acts).

Absolute immunity, however, does not cover administrative duties or investigatory functions of the prosecutor not related to initiating or conducting judicial proceedings. See Odd v. Malone, 538 F.3d 202, 208 (3d Cir. 2008). See also Kalina v. Fletcher, 522 U.S. 118 (1997) (prosecutor is protected only by qualified immunity for attesting to the truth of facts contained in

11

certification in support of arrest warrant, as in her provision of such testimony she functioned as a complaining witness rather than a prosecutorial advocate for the state); Burns, 500 U.S. at 492-96 (the provision of legal advice to police during pretrial investigation is protected only by qualified immunity); Buckley, 409 U.S. at 276-78 (prosecutor is not acting as an advocate, and is not entitled to absolute immunity, when holding a press conference or fabricating evidence). See also Yarris v. County of Delaware, 465 F.3d 129 (3d Cir. 2006)(presenting a detailed and nuanced analysis of when a prosecuting attorney is, and is not, entitled to absolute immunity for allegedly wrongful acts in connection with a prosecution).  Thus, when the behavior of the prosecutor "falls completely outside the prosecutorial role," for example, a prosecutor's deliberate destruction of exculpatory evidence, absolute immunity is unavailable. Giuffre v. Bissell, 31 F.3d 1241, 1251 (3d Cir. 1994)(quoting Kulwicki v. Dawson, 969 F.2d 1454, 1463 (3d Cir. 1992)); Odd, 538 F.3d at 211; Yarris, 465 F.3d at 137 (finding prosecutors absolutely immune for withholding exculpatory evidence but not absolutely immune for the deliberate destruction of exculpatory evidence, and stating that "while deciding not to furnish the prosecution's evidence to the defense may be an act of advocacy, throwing the evidence away is not such an act").

Indeed, according to the Third Circuit, "[i]t is well settled that prosecutors are entitled to absolute immunity from claims based on their failure to disclose exculpatory evidence, so long as they did so while functioning in their prosecutorial capacity." Yarris, 465 F.3d at 137; see also Imbler, 424 U.S. at 431 n. 34 (explaining that the "deliberate withholding of exculpatory information" is included within the "legitimate exercise of prosecutorial discretion"); Smith v. Holtz, 210 F.3d 186, 199 n. 18 (3d Cir. 2000)(prosecutor who decided to withhold exculpatory evidence had absolute immunity in § 1983 action so long as the decision was made while

12

functioning in his prosecutorial capacity), cert. denied, 531 U.S. 880 (2000); Douris v. Schweiker, 229 F. Supp.2d 391, 411 (E.D. Pa. 2002)(stating that "withholding exculpatory evidence is a quasi-judicial act protected by absolute immunity"), aff'd, 100 Fed. Appx. 126 (3d Cir. May, 13, 2004).

Moreover, in Van de Kamp, the Supreme Court considered whether or not an individual prosecutor's supervisors received absolute immunity for their failure to train him on proper disclosure under Giglio v. United States, 405 U.S. 150 (1972), which resulted in a violation of the defendant's due process. 555 U.S. at 343–44. In granting absolute immunity, the Court questioned whether absolute immunity would apply where a plaintiff sought damages "not only from the trial prosecutor but also from a supervisory prosecutor or from the trial prosecutor's colleagues—all on the ground that they should have found and turned over ... impeachment material...." 555 U.S. at 345. The Court concluded that absolute immunity would apply to all of these prosecutors because their behavior, "taken individually or separately, would involve preparation for trial and would be intimately associated with the judicial phase of the criminal process because it concerned the evidence presented at trial." Id. (internal quotation marks, omissions, and citations omitted).

Hence, Brady[5] and Giglio duties are functionally prosecutorial—they are intimately related to the judicial phase of the criminal process. Imbler, 424 U.S. at 430; see also Brady, 373

---

[5] Brady v. Maryland, 373 U.S. 83 (1963). To state a claim under Brady, the plaintiff must allege that (1) the withheld evidence was favorable either because it was exculpatory or could be used to impeach, (2) the evidence was suppressed by the government, and (3) the nondisclosure prejudiced the plaintiff. Strickler v. Greene, 527 U.S. 263, 281–82 (1999). As to the prejudice prong, the Supreme Court has stated that "strictly speaking, there is never a real 'Brady violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." Id. at 281.

U.S. at 87 ("[S]uppression by the prosecution of evidence favorable to an accused ... violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."). A Brady violation is not committed unless and until a prosecutor, in the course of preparing for or conducting a trial or direct appeal, does not turn over the material evidence in question. Brady and Giglio violations breach a defendant's trial rights and are, thus, inherently prosecutorial in nature.

Moore's allegations are limited exclusively to Assistant Prosecutor Kubereit as well as the Middlesex County Prosecutor's Office's withholding of allegedly exculpatory evidence during the state criminal trial proceedings. Since prosecutors are entitled to absolute immunity from claims based on their failure to disclose exculpatory evidence as long as they did so while functioning in their prosecutorial capacity, and since Plaintiff does not allege more with respect to willful destruction or other aggravating circumstances to remove the cloak of prosecutorial immunity, Plaintiff's Complaint must be dismissed with prejudice as against all named defendant prosecuting attorneys pursuant 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

## IV. CONCLUSION

For the reasons set forth above, the Complaint will be dismissed with prejudice, in its entirety, as against all defendants, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2). An appropriate Order follows.

DATED: May 10, 2012

Jose L. Linares
United States District Judge